IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TRACY WOODARD | ) | |
| Plaintiff, | ) | |
| | ) | **CASE NO. 3:14-1725** |
| v. | ) | SENIOR JUDGE HAYNES |
| | ) | |
| CORIZON INC., et al. | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR RELIEF FROM JUDGMENT

## I. INTRODUCTION

### A. STATEMENT OF THE CASE

This is a civil rights action brought under 42 U.S.C. § 1983 by a state prisoner seeking declaratory, injunctive, and monetary relief based on defendants' deliberate indifference to Plaintiff's serious medical needs. Plaintiff filed suit on August 22, 2014 and the district court, acting *sua sponte,* dismissed for failure to state a claim on the ground that "[w]hen a prisoner has received some medical attention and his claim is a challenge to the adequacy of the care provided, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law (Docket Entry No. 3)."

### B. STATEMENT OF FACTS

Plaintiff suffers from glaucoma. A specialist wrote a letter indicating the seriousness of Plaintiffs condition, "This condition will lead to blindness if not corrected. It needs **immediate** attention." Exhibit A (emphasis added). The letter, dated July 19, 2011, indicates a need for surgery; defendants delayed the surgery until 2013. *Id.* Defendants' delays in providing necessary treatment caused significant damage to Plaintiff's optic nerve.

In 2012, another specialist instructed prison officials to bring the plaintiff for treatment **immediately** when his eye pressure was elevated. These instructions were disregarded despite the danger posed that it would cause permanent damage to his optic nerve and could result in blindness. Plaintiff complained to numerous officials in an attempt to have his physician's orders carried out, to no avail.

## II. LAW AND ARGUMENT

### A. STANDARD OF REVIEW

Plaintiff brings the present motion pursuant to Fed.R.Civ.P. 60(b), which provides for relief from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

The decision to grant or deny a motion for relief from judgment under Rule 60(b) falls within the sound discretion of the trial court. *Futernick v. Sumpter Twp.,* 207 F.3d 305, 313 (6th Cir.2000) (citing *United States v. Universal Mgmt. Servs., Inc.,* 191 F.3d 750, 757 (6th Cir.1999)). "The general purpose of Rule 60(b) … is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Charter Twp. of Muskegon v. City of Muskegon,* 303 F.3d 755, 760 (6th Cir.2002) (quotations and citations omitted).

2

Plaintiff cites excusable neglect under Rule 60(b)(1) for his failure to present an adequate complaint. Courts consider three factors in deciding whether to grant relief under Rule 60(b)(1): "(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense." *Yeschick v. Mineta,* 675 F.3d 622, 628–29 (6th Cir.2012). "A party seeking relief must first demonstrate a lack of culpability before the court examines the remaining two factors." *Id.*

## B. POINT I—BECAUSE PLAINTIFF DID NOT UNDERSTAND THE LAW, HIS COMPLAINT FOCUSED ON THE INADEQUACY OF THE CARE RECEIVED, RATHER THAN FACTS THAT DEMONSTRATE DELIBERATE INDIFFERENCE

Plaintiff is a layman at law, and as such did not comprehend the procedural and substantive law applicable to the facts of this case. Specifically, he was unaware of the differences between the standards for medical malpractice and those required to establish constitutional deliberate indifference. In its memorandum (Docket Entry No. 3) entered September 2, 2014, this court found Plaintiff's complaint to be deficient in that it "fails to set forth with any degree of specificity the nature of his claims or the role each defendant played in the alleged violation of his constitutional rights."

Plaintiff concedes that his complaint was inartfully pled; he focused almost entirely on the inadequacy of the care received, rather than on delays and failure to follow physician's instructions that prove deliberate indifference. As a result, the court mistakenly concluded that Plaintiff's claim is based solely on "the adequacy of the care provided to him" (Docket Entry No. 3), which in turn led the court to dismiss for failure to state a claim.

3

**C. POINT II—PRISON OFFICIALS FAILED TO PROVIDE MEANINGFUL, AFFIRMATIVE ASSISTANCE IN THE PREPARATION OF LEGAL PAPERS IN THIS MATTER, DENYING PLAINTIFF ACCESS TO THE COURTS**

Plaintiff's excusable neglect (the deficient complaint) stems from his ignorance of the law, his difficulties in reading and writing due to visual impairment, and Turney Center Industrial Complex ("TCIX") prison officials' failure to facilitate access to the courts.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey,* 518 U.S. 343, 354, 116 S.Ct. 2174 (1996); *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell,* No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr.5, 1995). First, they must provide meaningful, affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's conditions of confinement. *Id.* (citing *Bounds* at 824–28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson,* 977 F.2d 996, 1009 (6th Cir. 1992)); see also *Bounds* at 822 (citing *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640 (1941)). The *Bounds* Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Bounds* at 824–25.

4

TCIX has a law library, but it suffers from a great number of shortcomings, to wit:

- In order to access the law library (as well as other legal services, such as sending out legal mail, notary services, etc.), one must send a request two (2) business days in advance for a "pass." This request must be sent through the mailroom, which must get it to the school office or library. Then staff generates the pass in the school office or library, who then send it to "operations." Next it is sent on to the pod officer, and finally it is given to the prisoner who requested the pass. More often than not, the passes do not reach the prisoner and he is denied access to the law library or other legal service. Plaintiff is assigned to a vocational carpentry class, and as such, is unable to go to the library through the week. Therefore, when he doesn't receive a pass on Saturday, he loses law library access for an entire week, which significantly hinders his ability to research and learn applicable law.

- The law library opens late and closes early regularly—leaving prisoners very little time to work on their cases. This is especially problematic for the plaintiff as he can only read for a few minutes before needing to rest his eyes as a result of his condition. Moreover, as stated above, he can only access the library on weekends; therefore, reduced hours have a greater impact on him than a prisoner who can attend the library daily.

- The law library is supposed to have six (6) Law Library Aides, but for many months they only had one Aide to assist 1,200 prisoners; it is unrealistic to expect one person to see to the legal needs of so many people. Again, this is especially troubling for the plaintiff because he is totally ignorant of the law and unable to read up on the law for extended periods without resting his eyes.

- The law library has six (6) computers for word processing of legal correspondence and documents, but most of these were out of order while Plaintiff was attempting to prepare his complaint.

- The reporters are all many years old and thus useless. Only two (2) Computers are available to access Westlaw, but these are frequently "down." When these computers are working, the wait to use them can be considerable.

The TCIX law library remains deficient in many ways, but they did recently hire two (2) more Law Library Aides, one of whom is providing extensive assistance in preparing this motion and memorandum. Plaintiff would remind the court that his writing skills and knowledge of the law remains inadequate, and that if this motion and memorandum reflect familiarity with the law and coherent argument, it is the result of the assistance of a "Jailhouse Lawyer," rather than his own abilities. Had the TCIX law library been open a sufficient number of hours, not hindered his access with senselessly complicated procedures, and had enough Law Library Aides for the plaintiff to receive assistance once in the library—he would have been able to file a satisfactory complaint from the start. For this reason, Plaintiff's neglect in filing a deficient complaint is excusable.

**D. POINT III—PRO SE LITIGANTS ARE ALLOWED AN OPPORTUNITY TO AMEND DEFICIENT COMPLAINTS BEFORE THE REVIEWING COURT FINALLY DISMISSES THE COMPLAINT**

Most courts have held that under the PLRA, as under prior law, *pro se* litigants are allowed an opportunity to amend deficient complaints before the reviewing court finally dismisses the complaint. *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795–796 (2d Cir. 1999) (holding that dismissal of a *pro se* complaint under § 1915(e)(2)(B) should be done with leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an

6

amended complaint would succeed in stating a claim"); *accord, Brown v. Johnson,* 387 F.3d 1344, 1348–49 (11th Cir. 2004); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 109–14 (3d Cir. 2002); *Shane v. Fauver,* 213 F.3d 113, 117 (3d Cir. 2000) (adhering to pre-PLRA practice); *Lopez v. Smith,* 203 F.3d 1122, 1124 (9th Cir. 2000) (*en banc*) (same); *see also Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th Cir. 1998) (holding under 42 U.S.C. § 1997e(c) that dismissing a *pro se* complaint for failure to state a claim without giving the plaintiff an opportunity to amend is generally error; however it is harmless error to dismiss without prejudice).

In the past, this circuit held that the PLRA prohibits this opportunity to amend. *McGore v. Wrigglesworth,* 114 F.3d 601, 612 (6th Cir. 1997) ("Under the Prison Litigation Act, courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal."). However, that standard was abrogated by a later holding that the screening requirement "does not—explicitly or implicitly—justify deviating from the usual procedural practice beyond the departures specified by the PLRA itself." *LaFountain v. Harry,* 716 F.3d 944, 951 (6th Cir. 2013) (citing *Jones v. Bock,* 549 U.S. 199, 214, 127 S.Ct. 910 (2007)). Since a plaintiff's ability to amend the complaint freely is part of the "usual procedural practice,"—*see* Rule 15(a)(2), *Fed. R. Civ. P.,* "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *Id.* at 951.

For the foregoing reasons, Plaintiff should be permitted to amend his complaint to reflect those facts that support the law in this matter.

7

## E. POINT IV—THE OPPOSING PARTY WOULD NOT BE PREJUDICED IF THE MOTION WERE GRANTED

This action was recently dismissed without service on the defendants; therefore, defendants would not be prejudiced if the motion was granted. If the Plaintiff is unable to amend his complaint to suitably state a claim, it will once again be dismissed without service.

## F. POINT V—PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

The plaintiff has a great likelihood of success on the merits. What defendants have done—"intentionally interfering with [medical] treatment once prescribed"—was specifically singled out by the Supreme Court as an example of unconstitutional "deliberate indifference" to prisoners' medical needs, *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285 (1976). In this case, a specialist specifically noted that Plaintiff was to be brought for treatment **immediately** when his eye pressure was elevated. Nursing staff and administrators with no medical training disregarded the specialist physician's instructions despite the danger posed that it would cause permanent damage to his optic nerve and could result in blindness.

Many other courts have held that the failure to carry out physicians' orders is unconstitutional. *See, e.g., Johnson v. Wright,* 412 F.3d 398, 406 (2d Cir. 2005) (denial of Rebetron therapy for Hepatitis C contrary to the recommendation of all the plaintiff's treating physicians); *Lawson v. Dallas County,* 286 F.3d 257, 263 (5th Cir. 2002) (disregard for follow-up care instructions for paraplegic); *Lopez v. Smith,* 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (failure to provide prescribed liquid diet for prisoner with a broken jaw, and substitution of a pureed diet that could not be drunk through a straw, stated a claim of interference with prescribed treatment); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996) (denial of prescription eyeglasses sufficiently alleged deliberate indifference); *Erickson v. Holloway,* 77 F.3d 1078,

1080-81 (8th Cir. 1996) (officer's refusal of emergency room doctors' request to admit the prisoner and take x-rays); *Aswegan v. Bruhl,* 965 F.2d 676, 677-68 (8th Cir. 1992) (failure to honor doctors' orders and refrain from cuffing the plaintiff's hands behind his back); *Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing change).

In addition, the *Estelle* Court also specifically mentions that delays in obtaining treatment, such as is the case here, can state a deliberate indifference claim. *Estelle v. Gamble* at 104. It should also be noted that while differences in professional judgment usually don't rise to the level of a constitutional claim, the *Estelle* Court found that "doctor's choosing the easier and less efficacious treatment ... may be attributable to deliberate indifference . . . rather than an exercise of professional judgment." *Estelle v. Gamble* at 104 (internal quotation marks omitted) (quoting *Williams v. Vincent,* 508 F.2d 541 (2nd Cir. 1974)).

## III. CONCLUSION

WHEREFORE, for the foregoing reasons Plaintiff prays that this Honorable Court will set aside the judgment (Docket Entry No. 4) entered on September 2, 2014, and grant leave to amend the complaint.Dated this 29th day of December, 2014

Tracy Woodard #159910
Turney Center Industrial Complex
1499 R. W. Moore Memorial Hwy.
Only, Tennessee 37140-4050

9



July 19, 2014

To whom it may concern:

Patient = Tracy Woodard

Mr. Woodard presented to our office with an intraocular pressure of 60mmHg in his left eye. We were able to decrease the pressure but this is temporary. This condition will lead to blindness if not corrected. It needs immediate attention. Glaucoma drops are not taking care of the problem. He needs to be evaluated by a glaucoma specialist who will most likely perform a surgical procedure

Thank you

Kay Gregory, O.D.