IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RECEIVED
IN CLERK'S OFFICE
APR 13 2015
U.S. DISTRICT COURT
MID. DIST. TENN.

**TRACY WOODARD**
Plaintiff,

v.

**CORIZON, INC.** Contract Health Care Provider
**BRENDA BOYD**, Medical Director (CBCX)
**OTIS CAMPBELL**, Medical Director (TCIX)
**JOHN DOE**, Health Services Administrator (CBCX)
**KEVIN REA**, Health Services Administrator (TCIX)
**MIKE JOHNSON**, Unit Manager (CBCX)
**F/N/U QUALLS**, Warden (CBCX)
**F/N/U SIMMONS**, Assistant Warden (CBCX)
**INOCENTES SATOR**, Physician (CBCX)
Defendants.

**No. 3:14-1725**
**SENIOR JUDGE HAYNES**
**JURY DEMAND**

# VERIFIED AMENDED COMPLAINT

## *INTRODUCTION*

This is a civil rights action filed by Tracy Woodard, a state prisoner, for damages and injunctive relief under 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution.

## *JURISDICTION*

1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331(1) and 1343.

## *PREVIOUS LAWSUITS*

***WOODARD V. STATE OF TENNESSEE,*** TN Claims Commission, No. T20141320

**TYPE OF ACTION:** Claim for Medical Negligence

**DISPOSITION:** Still Pending

### *Parties*

2. The plaintiff, **TRACY WOODARD,** was a prisoner in the custody of the Tennessee Department of Correction ("TDOC") during the events described in this complaint. He was incarcerated at Morgan County Correction Complex ("MCCX"), Turney Center Industrial Complex ("TCIX"), and Charles Bass Correctional Complex ("CBCX").

3. Defendant **CORIZON, INC.** is a corporation which has been, at all relevant times, under a contract with TDOC to provide medical care and services to prisoners confined with TDOC, including the plaintiff. As TDOC's medical provider, they are responsible for the development and promulgation of policies that ensure these health services meet the community standard of care. Corporate policy and custom led to repeated denial of urgent medical treatment for the Plaintiff. They are sued in their individual and official capacities.

4. Defendants **BRENDA BOYD** and **OTIS CAMPBELL** are the Medical Directors at CBCX and TCIX. As such, they are responsible for the healthcare of all inmates at their respective prisons, including the plaintiff. As physicians, they are responsible for ensuring inmate healthcare meets the community standard of care and have a duty to see that patients are cared for properly, regardless of cost to Defendant Corizon or the State. They were responsible for Plaintiff's medical care, and thus are culpable when he was denied urgent medical treatment. They are sued in their individual and official capacities.

5. Defendants **JOHN DOE** (whose name is presently unknown to the plaintiff) and **KEVIN REA** are the Health Services Administrators at CBCX and TCIX. As such, they are responsible for the coordination and administration of healthcare at their respective prisons. As Health Services Administrators, they are responsible for the development and promulgation of policies that ensure these health services meet the community standard of

care. They are also responsible for the training of their subordinate staff. Their responsibilities include the direct review of lower echelon employees' denial of urgent medical treatment in which capacity they participated in the conduct leading to this suit. They are sued in their individual and official capacities.

6. Defendant **MIKE JOHNSON** is a Unit Manager at CBCX and is responsible for the health, safety, and welfare of all inmates housed in his unit, including the plaintiff. After being informed of the denial of urgent medical treatment, he failed to act to remedy the constitutional violation. He is sued in his individual capacity.

7. Defendants **QUALLS** and **SIMMONS** are Wardens at CBCX, and are responsible for the health, safety, and well-being of the inmate population, including the plaintiff. As wardens, they are responsible for the training of their subordinate staff with regard to the proper procedures and standards, which those subordinates are responsible for enforcing among the inmate population. Their responsibilities included the direct review of lower echelon employees' denial of urgent medical treatment in which capacity they participated in the conduct leading to this suit. Both were informed of the denial of urgent medical treatment and failed to act to remedy the constitutional violation. They are sued in their individual capacities.

8. Defendant **INOCENTES SATOR** is a physician at CBCX. As such, he is responsible for the healthcare of inmates at the prison and ensuring it meets the community standard of care, subject to the approval of the Medical Director. As a physician, Dr. Sator has a duty to see that patients are cared for properly, regardless of cost to Defendant Corizon or the State. Dr. Sator breached that duty by failing to follow the orders of specialist physicians treating the

plaintiff because of Defendant Corizon policies and customs that required approvals for referrals. He is sued in his individual capacity.

9. All the defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

*FACTS*

10. Plaintiff has severe uveitic (acute) glaucoma.

11. Glaucoma is a "group of eye diseases characterized by an increase in the eye's intraocular pressure." Kalumuck, Karen E., et al., *Magill's Medical Guide* (Salem Press, Inc., 2nd ed., 2002), pg. 965.

12. "Of all the possible causes of blindness, glaucoma is among the most common, but it is also the most preventable." *Id. at 965.*

13. "Even a very small elevation in intraocular pressure will affect the eye adversely, causing damage to its particularly delicate parts." *Id. at 965.*

14. Delicate nerve fibers in the optic nerve are damaged by increased intraocular pressure; "[once] they die, they can never be regenerated or replaced, and blindness is the result." *Id. at 965.*

15. Symptoms of acute glaucoma include nausea, vomiting, severe headaches, "terrible pain and immediate damage to the eye … Immediate treatment is required to prevent blindness." *Id. at 967.*

16. On July 19, 2011, Dr. Kay Gregory, a specialist physician familiar with Plaintiff's medical history, wrote an introductory letter. The letter warned that:

> "[Plaintiff's glaucoma] will lead to blindness if not corrected. It needs immediate attention. Glaucoma drops are not taking care of the problem. He needs to be evaluated by a glaucoma specialist who will most likely perform a surgical procedure." *Appendix*, pg. 21.

17. On March 16, 2012, Dr. Robert Bishop, a specialist physician familiar with Plaintiff's medical history, wrote Physician's Orders directing Plaintiff to be "seen by an ophthalmologist" when he is having an acute glaucoma episode. *Appendix*, pg. 3.

18. On September 24, 2012, Dr. Rachel Kuchtey, a specialist physician familiar with Plaintiff's medical history, wrote to prison officials that the plaintiff "needs to be seen by [an] ophthalmologist @ metro when inflamed." *Appendix*, pg. 4.

19. On November 28, 2012, Defendant Sator noted that Plaintiff "need[s] to be seen at MGH – Dr. Groves – when inflamed." *Appendix*, pg. 5.

20. On January 3, 2013, Dr. Karen Grove, a specialist physician familiar with Plaintiff's medical history, wrote to prison officials. The letter warned that:

> "It is imperative that if he begins to have an episode, he be brought to the eye clinic at Nashville General Hospital immediately so that assessment during activity can be made, which can lead to definitive diagnosis." *Appendix*, pg. 6

21. On February 6, 2013, Barry Dority, a Family Nurse Practitioner familiar with Plaintiff's medical history, noted in Plaintiff's chart, "This is a lawsuit. I have already made the warden aware." *Appendix*, pg. 8

22. On March 26, 2013, Dr. Grove wrote Physician's Orders directing Plaintiff be brought to her if he has an "increase [in] pain/vision/swelling/flashes/floaters." *Appendix*, pg. 9

23. On May 16, 2013, Dr. Grove again wrote to prison officials. The letter complained that:

> "The patient did not follow up as planned with Dr. Joos, the glaucoma specialist, April 19, 2013. It is critical that he present for the next scheduled clinic, which occurs June 21, 2013 (she is only here once every 2 months). At that point, she can evaluate him for tube shunt glaucoma surgery to protect his left eye from further vision loss." *Appendix*, pg. 10

24. On August 16, 2013, Dr. Grove wrote Physician's Orders directing that "If patient has severe eye pain, please come immediately to emergency room." *Appendix*, pg. 12.

25. All documents referenced in ¶¶ 16–24 are included in Plaintiff's Institutional Health Record.

26. Plaintiff reported to the clinic frequently throughout 2011–2013 to complain of elevated intraocular pressure.

27. During these clinic visits, Plaintiff repeatedly asked to be taken to the emergency room or a specialty clinic immediately for urgent care as his physicians' had instructed (*see* ¶¶ 16–24).

28. Medical providers employed by Defendant Corizon, told the plaintiff that they were not permitted to send him for urgent care, and that they would have to schedule him an appointment for some future day.

29. Defendants Sator and Campbell both examined the plaintiff and reviewed the plaintiff's chart regularly during this time.

30. Defendants Sator and Campbell both denied Plaintiff the urgent care ordered by his specialist physicians.

31. Defendants Boyd, Sator, and Campbell are responsible for arranging specialized medical care outside the prison.

32. Defendant Corizon requires its' medical providers—including Defendants Boyd, Sator, and Campbell—to obtain approval prior to sending patients for specialized medical care.

33. These approvals significantly delay specialized medical care.

34. Plaintiff was taken to Metro General Hospital and the Vanderbilt Eye Institute for specialized medical care on several occasions.

35. These outside appointments did not take place until weeks or months after Plaintiff began having episodes of elevated intraocular pressure.

36. By the time Plaintiff was examined by specialist physicians, his pressure was back to normal, making a definitive diagnosis impossible.

37. Plaintiff's eye surgery (a Baerveldt shunt) was approved on August 21, 2013.

38. The surgery was performed on August 22, 2013.

*FAILURE TO REMEDY THE CONSTITUTIONAL VIOLATION*

39. On or around November 29, 2012, Plaintiff informed Defendant Johnson that his specialist physician's instructions were not being followed and asked for his help in obtaining medical treatment.

40. Defendant Johnson promised to speak to Defendant Boyd to see what could be done.

41. On information and belief, Defendant Johnson failed to take action.

42. On or around December 27, 2012, Plaintiff informed Defendant Simmons that his specialist physician's instructions were not being followed and asked for his help in obtaining medical treatment.

43. Defendant Simmons assured Plaintiff he would speak to Defendant Boyd.

44. On information and belief, Defendant Simmons failed to take action.

45. Plaintiff complained to Defendants Doe and Rea about the denial of urgent care on several occasions.

46. On one occasion, Plaintiff was taken to Defendant Doe by Grievance Board Chair Cpl. A. Hall (CBCX) while his grievance was pending. Cpl. Hall told Doe, "Don't you know this man is fixing to sue you all if you don't do something about his eye!"

47. On information and belief, Defendant Doe and Rea failed to take action.

*FAILURE TO CARRY OUT PHYSICIANS' ORDERS FOR FOLLOW UP CARE*

48. On September 17, 2013, Dr. Karen Joos, Plaintiff's surgeon and attending physician, wrote to prison officials regarding his postoperative follow up care. The letter warned:

> "[T]he surgery requires multiple followup appointments ... He has not been seen since his appointment on August 27, 2013 and this represents a danger to his eye." *Appendix*, pg. 12

49. On January 24, 2014, Dr. Joos criticized prison officials because Plaintiff was "last seen 10/18/13 prison did not bring for postop care thereafter." *Appendix*, pg. 14

*IRREPARABLE HARM*

50. On June 23, 2011; May 16, 2013; and August 16, 2013, Plaintiff's visual field was tested.
51. The tests reveal that Plaintiff has suffered significant loss of vision.
52. This vision loss is due to damage to nerve fibers in the optic nerve.
53. The vision loss is permanent.
54. The vision loss was proximately caused by failure to render urgent care when Plaintiff's intraocular pressure was elevated and the more than two years delay before he was approved for surgery.

*DEFICIENCIES IN THE ORIGINAL COMPLAINT*

Plaintiff originally filed suit on August 22, 2014 and the district court, acting *sua sponte,* dismissed for failure to state a claim (Docket Entry No. 4). Plaintiff, with the assistance of a "jailhouse lawyer," timely filed a motion for relief from judgment pursuant to Rule 60(b) (Docket Entry No. 8). The motion was granted and the plaintiff was ordered to file this amended complaint (Docket Entry No. 10). The following paragraphs address deficiencies in the original complaint (Docket Entry No. 1) mentioned in the memorandum (Docket Entry No. 3).

55. "Plaintiff fails to set forth with any degree of specificity the nature of his claims or the role each defendant played" (Docket Entry No. 3)

The sections entitled "*PARTIES*" and "*CLAIMS FOR RELIEF*" as well as the factual allegations adequately remedy these defects.

56. "Plaintiff has been examined by prison doctors…and has been taken…for treatment." *Id.*

While plaintiff was eventually taken for outside treatment, it was not in accordance with his specialist physicians' instructions, and only after unreasonable delay that caused nerve damage and loss of vision. What defendants have done—"intentionally interfering with [medical] treatment once prescribed"—was specifically singled out by the Supreme Court as an example of unconstitutional "deliberate indifference" to prisoners' medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105, 97 S.Ct. 285 (1976). The *Estelle* Court also specifically mentions that delays in obtaining treatment, such as Plaintiff was forced to suffer, can state a deliberate indifference claim. *Estelle* at 104.

Further, not every judgment by a doctor reflects *medical* judgment. In this case, prison doctors failed to follow the instructions of specialists due to corporate polices regarding outside care (*see* ¶¶ 32–36)—instructions at least one prison doctor concurred with (*see* ¶ 19). The *Estelle* Court found that "doctor's choosing the easier and less efficacious treatment … may be attributable to deliberate indifference … rather than an exercise of professional judgment." *Estelle* at 104 (internal quotation marks omitted) (quoting *Williams v. Vincent,* 508 F.2d 541 (2nd Cir. 1974)).

57. "Plaintiff acknowledges that 'I do have proper medication'" (Docket Entry No. 3).

Plaintiff was indeed receiving proper medication, but he was already at the highest dose available and the medication was insufficient. Dr. Gregory's letter noted,

"Glaucoma drops are not taking care of the problem. He needs to be evaluated by a glaucoma specialist who will most likely perform a surgical procedure." *Appendix*, pg. 2.

*Exhaustion of Administrative Remedies*

58. The plaintiff filed a grievance complaining about denial of urgent medical treatment, failure to follow physician's instructions, and delays in obtaining treatment. *Appendix*, pgs. 15–19.

59. Plaintiff was informed that the matter was "non grievable" by grievance board staff. *See Appendix*, pgs. 18–19.

60. Plaintiff twice indicated his desire to appeal the decision by signing in the appropriate places on the grievance form; both signatures were witnessed by Grievance Board Chair Cpl. A. Hall. *See Appendix*, pgs. 15 & 19.

61. Defendant Qualls personally reviewed the grievance at the first level of appeal, and failed to act to remedy the constitutional violation. (*See Appendix*, pg. 19).

62. The TDOC Commissioner did not respond to the second level of appeal; therefore, Plaintiff exhausted his **available** administrative remedies. *Boyd v. Corrections Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) "[T]he exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate grievance. To hold otherwise would permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances." (Internal quotations and citations omitted).

*Claims for Relief*

63. The refusal of Defendants Boyd, Sator, and Campbell to send Plaintiff for urgent medical care, despite the clear instructions of five (5) separate physicians, constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

64. Defendant Corizon has a policy of restricting, if not outright denying, specialized medical care ordered by a doctor when such care is expensive.

65. Defendants Doe, Rea, Boyd, Sator, and Campbell were following the policy of Defendant Corizon when they denied urgent medical care to Plaintiff that had been ordered by his treating specialist physicians.

66. The failure of Defendant Corizon to take steps to ensure that Plaintiff timely received needed medical treatment, despite its knowledge of Plaintiff's serious medical needs, constituted deliberate indifference to Plaintiff's serious medical needs.

67. The failure of Defendants Doe, Rea, Johnson, Qualls, and Simmons to take steps to ensure that Defendant Corizon complied with it's contract with the state so that Plaintiff could receive needed medical treatment in a timely fashion, despite their knowledge of Plaintiff's serious medical needs, constituted deliberate indifference.

68. All defendants contributed to significant delays in the Plaintiff's treatment. Delay of access to treatment can state a claim for deliberate indifference. *Estelle* at 104; *Estate of Carter v. City of Detroit,* 408 F.3d 304, 310, 312-13 (6th Cir. 2005) (holding a defendant who knew the plaintiff was exhibiting "the classic symptoms of a heart attack" and did not arrange transportation to a hospital could be found deliberately indifferent); *Dominguez v. Correction Medical Service,* 555 F.3d 543, 551 (6th Cir. 2009) (holding nurse's failure to respond promptly to prisoner with symptoms of heat stroke could support a finding of deliberate indifference); *Johnson v. Karnes,* 398 F.3d 868, 875-76 (6th Cir. 2005) (holding jail doctor's failure to schedule surgery for severed tendons despite emergency room instruction to return prisoner in three to seven days could constitute deliberate indifference); *Scicluna v. Wells,* 345 F.3d 441, 446 (6th Cir. 2003) ("Knowingly waiting three weeks to examine a prisoner

referred to one's care for urgent attention is conduct that a reasonable prison official … should have known would subject him to personal liability."); *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001) (failure to make timely referral to specialist was deliberate indifference).

69. As a result of Defendants' failure to timely provide needed medical treatment, Plaintiff suffered permanent vision loss and physical and emotional pain and injury.

70. Defendants knew or should have known that their failure to provide urgent medical treatment would lead to irreparable harm.

*RELIEF REQUESTED*

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Declare that Defendants violated Plaintiff's Eighth Amendment rights to medical care;

B. Issue an injunction requiring that that the Defendants comply with all specialist physicians' instructions regarding Plaintiff without delay;

C. Award compensatory and punitive damages against each defendant; and

D. Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.

*VERIFICATION*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of april, 2015

Tracy Woodard

Tracy Woodard #159910
Turney Center Industrial Complex
1499 R. W. Moore Memorial Hwy.
Only, Tennessee 37140-4050



Case 3:14-cv-01725 Document 17 Filed 04/13/15 Page 12 of 34 PageID #: 68

RECEIVED
IN CLERK'S OFFICE
APR 13 2015
U.S. DISTRICT COURT
MID. DIST. TENN.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

**TRACY WOODARD**
Plaintiff,

v.

**CORIZON INC., et al.**
Defendants.

**CASE NO. 3:14-1725**
SENIOR JUDGE HAYNES

**APPENDIX TO AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Letter from Dr. Kay Gregory (7-19-2011) .......... 2

Physician's Orders (3-16-2012) .......... 3

Attending note by Dr. Rachel Kuchtey (9-24-2012) .......... 4

CR-3624 (CCC) (11-28-2012) .......... 5

Letter from Dr. Karen Grove (1-3-2013) .......... 6

Progress Record (2-6-2013) .......... 8

Physician's Orders (3-26-2013) .......... 9

Letter from Dr. Karen Grove (5-16-2013) .......... 10

Physician's Orders (8-16-2013) .......... 12

Letter from Dr. Karen M. Joos (9-17-2013) .......... 13

Letter from Dr. Karen M. Joos (1-24-2014) .......... 14

Grievance No. 12-19150/00254119 .......... 15




KATHY L. SHAMBLIN, O.D., F.C.O.V.D.

Director: Bedford Vision & Eye Clinic

Fellow: College of Optometrists in Vision Development

Member: American & Tennessee Optometric Associations, National Association of Sports Vision, Neuro-Optometric Rehabilitation Association

July 19, 2011

To whom it may concern:

Patient: Tracy Woodard

Mr. Woodard presented to our office with an intraocular pressure of 60mm Hg in his left eye. We were able to decrease the pressure but this is temporary. This condition will lead to blindness if not corrected. It needs immediate attention. Glaucoma drops are not taking care of the problem. He needs to be evaluated by a glaucoma specialist who will most likely perform a surgical procedure.

Thank you

Kay Gregory, O.D.

HELPING YOU PROTECT YOUR VISION:
Sight-saving exams to protect you from cataracts & glaucoma · Vision therapy to treat vision-related learning disorders in children · Pre & postoperative care for Cataract & LASIK · Treatment of eye disease & injuries. Comfortable contacts for even difficult-to-fit lens wearers

SELECTION SERVICE & SAVINGS
The latest fashion frames · No-line bifocals · Thin, scratch resistant lenses · Professional style consultants to help you choose the perfect look · Full range of contact lenses including bifocals · Most insurance accepted · Visa & MasterCard · Medicare · Two year frame & lens warranty

915 Collorecki Boulevard · Shelbyville, TN 37160 · (931) 684-2197

# PHYSICIAN'S ORDERS

NAME Woodard, Tracy
ROOM NO. (ADDRESS)
HOSP. NO. 159910 TCIX-M 6509
PHYSICIAN Otis Campbell, MD

DOB: 1-18-70
Drug Allergies NKDA

| Date & Time | Another brand of drug identical in form and content may be dispensed unless checked ☐ — DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS | Nurse's Initials |
|---|---|---|
| 2-8-12 | XALATAN Sig. Install i gtt O.U. every other evening before retiring. X180 days | |
| | M.J. SALOMON, O.D. MJ Salomon OD | |
| | Noted 2-8-12 @ 1550 Pat Baumann | |
| CCC Review 3-7-12 TCIX Clinic 1024 4A | meds due 6-20-12 | |
| | ① [illegible] gen med (glaucoma) ccc in 90 days. | |
| | Casey Ferida | |
| | Tim Hansche PA-C TIM HANSCHE, PA-C | |
| | noted Jane Branch RN 3-7-12 @ 1245 | |
| 3/16/12 | Note to Dr Campbell | |
| | Pat has acute Glaucoma episodes. When I/m is in an episode, I rec that she be seen by ophthalmologist to differential Dx between angle Closure or Glaucomacyclitic crisis | |
| | [illegible signature] | |
| | Noted 3/17/12 @ 1030 Pat Baumann | |

Case 3:14-cv-01725 Document 17 Filed 04/13/15 Page 15 of 34 PageID #: 71

| V | SC | CC | BAT | T | Time 11:11 | Vanderbilt Eye Institute |
|---|---|---|---|---|---|---|
| OD | 20/25 | | | (AP) OD 20 TP | | Billing #: 230023392024 MR#: 033797465 Visit: 09/24/12 |
| OS | 25 | | | OS 18 | | Department: 1866 – OPH – GLAUCOMA CLN |

Attn Prov: 53291 – KUCHTEY, RACHEL WANG RETURN PATIENT
Name: WOODARD,TRACY DOB: 01/18/1970 M PH: 931–729–6725
Ins Coverage: CORIZON Plan: CORIZON
Enctr Form #: 230023392024 Copay paid: 0
Ref Nm: 37000 – SELF REFERRAL Phone:
PCP Nm: Phone:
Epic Acct #: 030125724 Acct Type: Third Party Liabili*
Service Prov: 53291 – KUCHTEY, RACHEL* Appt: 9:40AM ChkIn: 9:31AM

Orientation: ☐ A & O x 4
Mood/Affect: ☐ Appropriate
External: OD-nl ____ OS-nl ____
Pupils: ☐ No RAPD ☐ No Anisocoria
EOM: ☐ Full OU ☐ Ortho
CVF: ☐ Full OU

Vision / Redness / Pain / Discharge / Floaters

c/o 2 episodes of ↑ IOP - severe headaches pain - Feels ~ 1 time every mo gtts "stop working"

Flomax Defibrillator Blood Thinners

**Slit Lamp Exam**

| OD | | OS |
|---|---|---|
| ____ cl | Lids | cl ____ |
| ____ cl | Conj | cl ____ |
| ____ cl | Cornea | cl ____ |
| Quiet D&Q | A/C | cl Quiet |
| ____ cl | Iris | cl ____ |
| ____ cl | Lens | cl ____ |

☐ IOL: PC / AC ☐ IOL: PC / AC

Ac Quiet

Ø post synechiae.

**Gonio:** 92020 by ____

OD X OS X

Angle Tmp:

**Fundus Exam**

| OD | | OS |
|---|---|---|
| ____ cl | Vitreous | cl ____ |
| ____ cl | Disc | cl ____ |
| ____ cl | Macula | cl ____ |
| ____ cl | Vessels | cl ____ |
| ____ cl | Periphery | cl ____ |
| ____ | C/D | ____ |

Optic Nerve Head:

ok to see Dr Groves c retro also

IMP/PLAN:

① no uveitic glc
IOP ok today
CPM
ok to f/u c Dr Singleton 3-4 mos
needs to been seen by ophthalmologist @ Meds when inflamed

Handout Given: ____
☐ Handout was given and reviewed with patient.

Test Results Discussed w/Patient:
☐ HVF ☐ OCT ☐ Photos ☐ Visante ☐ Pentacam

Scribe: [signature] Date/Time: 9-24-12
☐ I have reviewed and confirmed the history and exam elements as documented by the technician/nurse on the first page with the patient.
☐ The scribe notes on the first and second page accurately reflect work and decisions made by me.
☐ I have examined the patient, reviewed and confirmed the fellow/resident note with exceptions noted on my evaluation.

Physician's Signature [signature] Date/Time: 9/24/12

Patient to return for the following:
Return to Clinic: ____ Days Weeks Months Years
MR Dilate IOP OCT Pachy Photos Topo VF As/Ks

☐ Continue present treatment plan with above noted exceptions.
☐ Risks, benefits, alternatives of surgery discussed.
☐ Patient desires to proceed.
☐ Reviewed procedure with use of visual aids.



Case 3:14-cv-01725 Document 17 Filed 04/13/15 Page 16 of 34 PageID #: 72



# TENNESSEE DEPARTMENT OF CORRECTION
## CHRONIC DISEASE CLINIC
## TREATMENT PLAN

Inmate Name: Weekard, Tracy
TDOC Number: 159910
Institution: CBCX

**LIST CHRONIC DISEASES**

1) Glaucoma 3) 5)
2) 4) 6)

Either list or refer to pharmacy profile for current medications: see MAR (eye drops) — Alphagan, Xalatan & Timoptol

**SUBJECTIVE:**

Asthma: # attacks in last month? ____ Seizure disorder: # seizures since last visit? ____

# short acting beta agonist canisters in last month? ____ Diabetes mellitus: # hypoglycemic reactions since last visit? ____

# times awakening with asthma symptoms per week? ____ Weight loss/gain ↑ ↓ ____ lbs.

CV/hypertension (Y/N): Chest pain? ____ SOB? ____ Palpitations? ____ Ankle edema? ____

HIV/HCV (Y/N): Nausea/vomiting? ____ Abdominal pain/swelling? ____ Diarrhea? ____ Rashes/lesions? ____

For all diseases, since last visit, describe new symptoms: last seen by optometrist — 9-6-12 & Dr. [illegible] — 9-24-12

**OBJECTIVE:**

Patient adherence (Y/N): with medications? Y with diet? Y with exercise? ____

Vital signs: Temp 97.2 BP 138/[illegible] Pulse 64 Resp 16 Wt 209 PEFR ____ INR ____ 6'0"

Labs: Hgb A1C ____ HIV VL ____ CD4 ____ Total Chol ____ LDL ____ HDL ____ Trig ____

Range of fingerstick glucose/BP monitoring: ____

Physical Evaluation (PE): WD, B/M — alert — not in distress — upset [illegible] about condition & possibly getting [illegible]

| | | | |
|---|---|---|---|
| HEENT/neck: | Eyes — red mass [illegible] in (L) eye — no discharge or [illegible] noted | Extremities: | neg |
| Heart: | ✓ | Neurological: | |
| Lungs: | ✓ | GU/rectal: | |
| Abdomen: | ✓ | Other: | |

Additional Comments: ____

| ASSESSMENT: | Degree of Control: G | F | P | NA | Clinical Status: I | S | W | NA |
|---|---|---|---|---|---|---|---|---|
| 1 Glaucoma (End Stage) | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☒ | ☐ |
| 2 (Uveitic) | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 3 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 4 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

*Degree of Control: G-Good F-Fair P-Poor NA-Not Applicable
*Clinical Status: I-Improved S-Same W-Worse NA-Not Applicable

**PLAN:**

Medication changes:

Diagnostics: Referred to ophthalmologist

Labs:

Monitoring: BP ✓ x day/week/month Glucose ____ x day/week/month Peak flow ____ Other: ____

Education provided: ☐ Nutrition ☐ Exercise ☐ Smoking ☐ Test results ☐ Medication management ☐ Other: ____

Referral (list type): ____ Specialist: ____

# days to next visit? ☒ 90 ☐ 60 ☐ 30 ☐ Other: ____ Discharged from Chronic Clinic (specify clinic): ____

Additional Comments: needs to be seen at MGH — Dr. [illegible] when inflamed.

[signature] Mid-Level / Physician Signature 11-28-12 Date

CR3624 (Rev. 4-11) Duplicate as Needed RDA 1100

January 3, 2013

Tennessee Department of Correction
Charles Bass CC
7177 Cockrill Bend Boulevard
Nashville, Tennessee 37243-0470

DeBerry Special Needs Facility
7575 Cockrill Bend Boulevard
Nashville, Tennessee 37209-1057

Re: Tracy Woodard
MRN: 00660678

To Whom It May Concern:

I saw Mr. Woodard in the eye clinic today (DOB: 01/18/1970). He is a 42-year-old African American male with a history of elevated intraocular pressure and glaucoma OS, the left eye. The patient states that he has had about 7 episodes of left eye pain with headache over the last 24 months. The episodes can last up to 30 days. On review of the patient's records, it is revealed that Bedford Vision and Eye Clinic on 07/2011, he had an intraocular pressure of 60 in the left eye and on another occasion 50 in the left eye. When seen at Nashville General Hospital Emergency Department in 12/2011, the intraocular pressure was normal in both eyes but he did have keratic precipitates in the left eye. When seeing Dr. Kuchtey, a glaucoma specialist at Vanderbilt, in 05/2012 and 09/2012, he was on maximum medical therapy and his intraocular pressures were within normal limits in both eyes. His Humphrey visual field testing at that time revealed a full field in the right eye and nasal depression in the left.

ALLERGIES: None.

PAST OCULAR HISTORY: As stated in the HPI.

PAST MEDICAL HISTORY: Healthy.

FAMILY HISTORY: Diabetes and hypertension, also grandmother with glaucoma.

REVIEW OF SYSTEMS: Negative 14-point review of systems. The patient does not smoke or drink.

TOPICAL MEDICATIONS: Include:

1. Timolol b.i.d. OU.
2. Latanoprost at bedtime OU.
3. Brimonidine b.i.d. OU.

noted [illegible] 2/5/13

SYSTEMIC MEDICATIONS: None.

PHYSICAL EXAMINATION: The visual acuity is 20/25 minus in both eyes.



Case 3:14-cv-01725 Document 17 Filed 04/13/15 Page 18 of 34 PageID #: 74

Confrontation visual fields are full in both eyes. Applanation: Intraocular pressure is 18 and 16. Motility is full and the patient is orthotropic. External examination is within normal limits. The patient has a trace afferent pupillary defect of the left eye. The anterior segment exam is within normal limits on the right eye. The left eye reveals quiet conjunctiva, clear cornea with few endothelial pigment cells, quiet anterior chamber with no cell. The iris has some atrophy temporally in the left eye. There is trace nuclear sclerotic cataract. On dilated funduscopic exam of both eyes, the cup-to-disc ratio is 0.6 in the right and 0.85 in the left. The neural retina and lens are sloping in both eyes. There is trace pallor on the left. There is possibly a superotemporal notch on the left. Previous pachymetry revealed central corneal thickness of 510 micrometers on the right and 505 micrometers on the left. The gonioscopy previously has been open.

IMPRESSION/PLAN AND CARE:
1. Glaucoma of the left eye. Per records, the patient has had episodes of very high pressure without documentation of significant inflammation. Differential diagnoses: Glaucomatocyclitic crisis, uveitic glaucoma (iris atrophy is consistent with herpetic uveitis or previous trauma). Glaucomatocyclitic crisis is more likely given the lack of structural changes that would be expected with repeated untreated uveitic episodes.

2. Open-angle glaucoma suspect, both eyes. The patient has thin corneas in the family history as well as the risk of being African American.

For glaucoma of the left eye and open-angle glaucoma suspect in both eyes, continue present management with timolol, latanoprost, and brimonidine. The patient is to return in one month for Humphrey visual field testing.

It is imperative that if he begins to have an episode, he be brought to the eye clinic at Nashville General Hospital immediately so that assessment during activity can be made, which can lead to definitive diagnosis.

Karen Grove, MD
D: 1/3/2013 5:41:00 PM
T: 1/3/2013 7:51:59 PM
JOB: 248-01-096503-015159
Authenticated and Edited by Karen E. Grove, MD On 1/04/13 8:43:13 AM

page 7 of 19



TENNESSEE DEPARTMENT OF CORRECTION

**PROBLEM ORIENTED – PROGRESS RECORD**

CBCC

INSTITUTION

INMATE NAME: Woodard, Tracy INMATE NUMBER: 159910

| DATE | TIME/PLACE | PROB NO. | |
|---|---|---|---|
| 2/5/13 | 0720 | A | Alt in comfort |
| cont | CBCC | P | Tylenol 325 mg 1-2 Q4-6° PRN x 3 days |
| | | | Refer to NP re: glaucoma 2/6/13. |
| | | | —Vicki Padilla RN MSN Vicki Padilla, RN-MSN |
| | | | |
| 2/6/13 | CBCC 1405 | | If they do not see me inflammation it is impossible. I have |
| | | | had pressure build up in my left eye but by the time I get to the |
| | | | doctor they are down. They need to see me right then. Right then |
| | | | when it is happening. I don't [illegible] [illegible] (fail) to document |
| NEED CLARIFIED | | | I came. This is a lawsuit. I have already made the |
| TRANSLATED | | | Warden aware. He probably will be [illegible] [illegible]. States my pressure |
| | | | has been up for a week that is why I wear these |
| | | | Sunglasses. Offered to make arrangements for transfer |
| | | | to Ophthalmology now but states the pressure is almost back |
| | | | to normal there is not a need for me to go now. |
| | | | Advised that when pressure builds up to notify me & I will |
| | | | See that he gets to the appropriate medical provider ~~timely~~ timely |
| | | | Inmate Woodard 159910 agrees c plan |
| | | | B.D. |
| | | | |
| | | | BARRY T. DORITY, FNP-BC |
| 2/6/13 | 2pm | | Reviewed ophthalmology notes |
| | | | [signature] |
| | | | |
| 2/7/13 | | S | Ultrasound report noted. |
| CBCC | | | PCP to evaluate for further |
| | | | Action! |

Do Not Write on Back

Pepito Salcedo, MD [signature] 2/13

CR-1884 (Rev. 5-01) *Printed or Duplicate as Needed* RDA 1100

# BALL POINT PEN ONLY

*DOCTOR MUST RECORD DATE, TIME AND SIGNATURE OF EACH WRITTEN ORDER.*
*NURSE MUST RECORD DATE, TIME AND SIGNATURE OF EACH ORDER NOTED.*

| UNAPPROVED ABBREVIATIONS *(DO NOT USE)* | | | | |
|---|---|---|---|---|
| Ug or g (Write "mcg") | TIW (Write "3 times weekly" | U or u (Write "unit") | IU (Write " I Units") | Q 6PM, etc (Write "1800 nightly", etc.) |
| cc (Write"ml") | MgSO4 (Write " magnesium sulfate") | QOD (Write "every other day") | QD (Write" daily") | per os (Write "PO, "by mouth" or orally" |
| BT (Write "hs") | CPZ (Write"Compazine") | HCT (do not use to mean drug) | ZNSO4 (Write "Zinc Salt") | X3d (Write "x 3 doses" or x 3 days") |
| | Leading Zero REQUIRED (0.125mg digoxin) | TRAILING ZERO PROHIBITED 1mg **not** 1.0 mg | | MS or $MSO_4$ (Write "morphine sulfate" |

| DATE | TIME | ORDERS |
|---|---|---|
| | | HEIGHT: WEIGHT: |
| 3/26/13 | | ALLERGIES: NKDA |
| | Dx: | Posner-Schlossman vs. herpetic uveitis OS c̄ |
| | | wound leak OS s/p AC clamping 3/25/13 |
| 2 pm | | |
| | | ① Hold prednisolone 1% OS (will re-start later) |
| | | ② Start vigamox ~~QID~~ 1gtt QID OS |
| | | ③ Alphagan (Brimonidine) TID OU |
| | | ④ Timolol BID OU |
| | | ⑤ Latanoprost QHS OU |
| | | ⑥ Diamox Sequel 500mg BID |
| | | ⑦ Acyclovir 400mg 5x/day |
| | | ⑧ Bandage contact lens placed OS → do not remove |
| | | ⑨ Return immediately if ↑↑ pain / ↓↓ vision / swelling / |
| | | flashes / floaters |
| | | ⑩ follow-up NGH Eye Clinic Dr. Grove |
| | | Thursday 1 pm |
| | | Karl Grove MD |
| | | 1285-1217-5576 |

[signature] Jacqueline Satori M.D.

NASHVILLE GENERAL HOSPITAL at MEHARRY
NASHVILLE, TN

**PHYSICIAN ORDERS**
109.087/rev. 01-2007
Page 1 of 1

WOODARD, TRACY
DOB 01/18/70 43Y M 03/26/13 1248
MR# 66-06-78
Acct #:1308580333

White – Chart Yellow – M.A.R.



page 9 of 19

May16, 2013

Charles Bass Correctional Facility
Tennessee Department of Corrections

Re: Tracy Woodard
DOB: 01/18/1970
MRN: 451956

To Whom It May Concern:

I saw Mr. Woodard in the eye clinic today. He has a history of glaucoma with episodic high pressure and inflammation in the left eye with a recent active episode as well as a glaucoma suspect in the right eye. The patient denies any symptoms today. On discussing his use of medications, he states he was using the prednisolone 1% in both eyes instead of in the left eye only. He also states that he stopped the Diamox and acyclovir though he was not directed to do this.

ALLERGIES: No known drug allergies.

PAST OCULAR HISTORY: As stated in the HPI.

PAST MEDICAL HISTORY: Patient states he is healthy though he had a borderline cholesterol in the recent past.

REVIEW OF SYSTEMS: Negative 14-point review of systems.

SOCIAL HISTORY: The patient does not drink or smoke.

TOPICAL MEDICATIONS: Include:
1. Timolol b.i.d. both eyes.
2. Latanoprost at bedtime OU.
3. Brimonidine t.i.d. OU.

SYSTEMIC MEDICATIONS: None.

EXAMINATION: Visual acuity is 20/20 in each eye. Confrontation visual fields are full in both eyes. Intraocular pressure by applanation was 36 and 20. Motility is full. Patient is orthotropic. Pupils are abnormal with an afferent pupillary defect of the left pupil. On anterior segment examination, the conjunctiva is with normal limits. There is no injection of either eye. The cornea is normal and clear in both eyes. The anterior chamber reveals a few pigmented cells in each eye and a rare white cell in the left anterior chamber. The iris is intact in the right eye. There is superficial diffuse iris atrophy of the left eye. Undilated funduscopic examination reveals a cup-to-disk ratio of 0.6 on the right and 0.85 on the left with a supratemporal notch. Humphrey visual field testing reveals a full field in the right and inferonasal step defect in the left.

Innocentes Sator, M.D.

RECEIVED
JUN 06 2013
BY:

PRINTED BY: lagrimes DATE 5/28/2013

page 10 of 19

IMPRESSION/PLAN OF CARE:

1. This patient has glaucoma in the left eye with recent episode of mild inflammation and extremely elevated intraocular pressure around 60. Previous records from Bedford Vision revealed episodes in 2011 with pressure of 60 in the left eye as well. HSV and VZV PCR of aqueous were negative in March. Differential includes Possner Schlossman syndrome, anerior uvietis, POAG. PRP, lyme adn CXR were ordered and performed today. Today the intraocular pressure is elevated in both eyes but much improved from his highest pressure. I suspect that since he is using the Pred- Forte 4 times a day in both eyes instead of in the left eye only, he is experiencing a steroid response. Therefore, he is quickly tapering off the steroid in the right eye. The tapering of the left eye will be slower. He will go down to 3 times per day for one week, 2 times per day for one week, one time a day for one week and then stop. He is to continue timolol b.i.d. OU, brimonidine t.i.d. OU and latanoprost at bedtime OU. The patient did not follow up as planned with Dr. Joos, the glaucoma specialist, April 19, 2013. It is critical that he present for her next scheduled clinic which occurs June 21, 2013 (she is only here once every 2 months). At that point, she can evaluate him for tube shunt glaucoma surgery to protect his left eye from further vision loss.

2. Primary open angle glaucoma suspect of the right eye. Risk factors include thin central cornea thickness, family history of glaucoma, and African ancestry. His Humphrey visual field test today reveals a full field on the right and inferonasal step on the left. His intraocular pressures were controlled well on maximum medical therapy prior to his mistaken steroid use in the right eye. Therefore, I believe there is a steroid response and once he is off the steroid, the pressure will likely be appropriate. The intraocular pressure will be checked at his appointment on June 21, 2013 with Dr.Joos .

Patient is to return June 21, 2013 to see Dr. Joos or sooner with any concerning symptoms.

With any questions, please do not hesitate to call.

Sincerely,

Karen Grove

D: 05/16/2013 19:08:56CDT, EST
T: 05/17/2013 04:35:04CDT, EST
JOB NUMBER: 3919606/13624133
/kz

6-21-13

PRINTED BY: lagrimes DATE 5/28/2013

page 11 of 19

# BALL POINT PEN ONLY

*DOCTOR MUST RECORD DATE, TIME AND SIGNATURE OF EACH WRITTEN ORDER.*
*NURSE MUST RECORD DATE, TIME AND SIGNATURE OF EACH ORDER NOTED.*

| UNAPPROVED ABBREVIATIONS *(DO NOT USE)* | | | | |
|---|---|---|---|---|
| Ug or g (Write "mcg") | TIW (Write "3 times weekly" | U or u (Write "unit") | IU (Write " I Units") | Q 6PM, etc (Write "1800 nightly", etc.) |
| cc (Write"ml") | MgSO4 (Write " magnesium sulfate") | QOD (Write "every other day") | QD (Write" daily") | per os (Write "PO, "by mouth" or orally" |
| BT (Write "hs") | CPZ (Write"Compazine") | HCT (do not use to mean drug) | ZNSO4 (Write "Zinc Salt") | X3d (Write "x 3 doses" or x 3 days") |
| | Leading Zero REQUIRED (0.125mg digoxin) | TRAILING ZERO PROHIBITED 1mg not 1.0 mg | | MS or $MSO_4$ (Write "morphine sulfate" |

| DATE | TIME | ORDERS |
|---|---|---|
| | | HEIGHT: WEIGHT: |
| | | ALLERGIES: ~~PCN~~ NKDA |
| 8/16/13 | 1115 | |
| | | 1) dorzolamide eye drop tid, both eyes |
| | | 2) timolol eye drop, bid, both eyes |
| | | 3) latanoprost eye drop, qhs, both eyes |
| | | 4) brimonidine eye drop, tid, both eyes |
| | | |
| | | or ↓ vision |
| | | If patient has severe eye pain please |
| | | come immediately to emergency room |
| | | |
| | | |
| | | Inocentes Sator, M.D. |
| | | 8/19/13 |
| | | |
| | | |
| | | |

NASHVILLE GENERAL HOSPITAL at MEHARRY
NASHVILLE, TN



**PHYSICIAN ORDERS**
109.087/rev. 01-2007
Page 1 of 1

WOODARD, TRACY
DOB 01/18/70 43Y M 08/16/13 1030
MR# 45-19-56
Acct #:1322880108

White – Chart Yellow – M.A.R.

**033797465 WOODARD, TRACY (01/18/1970 - then 43YO M)**

**VEI - Referral Letter 2013/09/17 22:37** Created by: **Joos, Karen M.** (Last modified by Joos, Karen) Electronically signed by: **Joos, Karen (attending physician)** (joosfbf) on 2013/09/19 07:23

September 17, 2013

Medical Director
Corizon Prison System
VUH#: 033797465

**DOB:** 01/18/1970

**Dear Medical Director:**

Mr. Tracy Woodard has severe uveitic glaucoma with a probable traumatic component. He underwent a Baerveldt shunt on August 22,
2013. He was seen on postoperative day #1, on August 23, 2013 and postoperative day #6, on August 27, 2013. Subsequently, the surgery requires multiple followup appointments and these had been scheduled with your facility. This included one week later, on September 3, 2013, and then e is supposed to be seen every two weeks for two months to watch for opening of the tube. He has not been seen since his appointment on August 27, 2013 and this represents a danger to his eye. Our scheduler attempted to reach the prison regarding the schedule without success. Please call my office, my administrative assistant at 615-936-1957 to arrange postoperative period as soon as possible.

Sincerely,

Karen M. Joos, M.D., Ph.D. Associate Professor of Ophthalmology Vanderbilt Eye Institute

KJ/am3725 dd: 09/17/2013 08:22 PM dt: 09/18/2013 10:37 PM
**JobID:** 7100570

cc: Prison administrative Scheduler

Chasidy Singleton, MD Vanderbilt Eye Institute 2311 Pierce Avenue Nashville, TN 37232-8808

Jan. 29. 2014 4:56PM RECEIVED BY CENTENE:'2014-01-29 13:57:02.006/5

**Vanderbilt Eye Institute**
MD/OD Form
New / Return Patient

Billing #: 230027461999 MR#: 033797465 Visit: 01/24/14
Department: 1866 - DPH - GLAUCOMA CLN
Attn Prov: 02262 - JOOS, KAREN M RETURN PATIENT
Name: WOODARD,TRACY DOB: 01/10/1970 M PH: 931-729-6725
Ins Coverage: BC TENNESSEE Plan: BLUE PREFERRED/PPO
Encir Form #: 230027461999 Copay due: 0.00 Copay paid: 0
Ref Nm: 37000 - SELF REFERRAL Phone:
PCP Nm: Phone:
Epic Acct #: 038125724 Acct Type: Third Party Liabil*
Service Prov: 02262 - JOOS, KAREN M Appt: 8:45AM Chkin: 7:57AM

Consult Req By:
☐ Self Ref Ref By:
I have reviewed and confirmed the technician's history.
Signature:

CC: 3/4 glaucoma

HPI: 44 yom f/u weekly traumatic glaucoma seen last seen 10/18/13 recommended not trying for bostrom care thereafter [illegible] not open [illegible] 10/18/13

Allergies: NKDA

POHx: Baerveldt OS
Traumatic glaucoma

PMHx:
☐ DM
☐ HTN
☐ CA
☐ Heart Dz
Ø change

FHx:
☐ DM
☐ HTN
☐ CA
☐ Same Cond GM

Teaching Physician: History reviewed and confirmed with the patient and resident. I concur or revise as follows:
☐ Location
☐ Quality
☐ Severity
☐ Duration
☐ Timing
☐ Context
☐ Modifying factors
☐ Associated Sign/Sx

ROS: ☐ See questionnaire that I have reviewed and signed.
EHA, ENA, ODC

SOC:
☐ Tob
☐ ETOH

Systemic Rx: Revied

Topical Rx:
Pred 4x OS
Timolol Bid OU
Brim Tid OU
Dorz ~ Tid OU
latanoprost qhs OU

Key Elements:

CVF: Full Full
Pressure: 17 / 15 @ 9:11 (A) T

s/c ph N
VA OD
OS

PW: sp cyl axis add prism

Motility ☐ ortho Full Full

| | sp | cyl | axis | add | VA |
|---|---|---|---|---|---|
| AR | | | | | |

| | sp | cyl | axis | VA |
|---|---|---|---|---|
| CR | | | | |

Pupils/Iris nl iris morph nl
0 Anisocoria 0
0 APD 0

[signature]

I have reviewed the chart and evaluated the tests. I have discussed the differential diagnosis, work-up and treatment plan with the resident, and I approve the plan.

☐ I request consultation by:
Dr.
Attending:

Physician Signature: Date: 1-24-14 @ 9:11

Date:

MC 5864 (10/2005) Page 2 of 3

page 14 of 19





## TENNESSEE DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE

CBCC Grievance
OCT 01 2012
RECEIVED

NAME: TRACY WOODARD   NUMBER: 159910   INSTITUTION & UNIT: CBCX unit 5 Rm 17

DESCRIPTION OF PROBLEM: I am a chronic glaucoma patient and by the time I ever get to go to the DR. my eye pressure goes back down. (continued on back.

REQUESTED SOLUTION: Upon my next episode, I need to be seen by my DR. Kuchkey OR DR. Singleton while I'm having the episode. Always by the time I'm seen which is weeks OR months, my pressure is normal

Tracy Woodard — Signature of Grievant   9/27/2012 — Date

TO BE COMPLETED BY GRIEVANCE CLERK

12-19150/00~~159910~~ 254119 — Grievance Number   10/1/12 — Date Received   "INP" [signature] — Signature Of Grievance Clerk

INMATE GRIEVANCE COMMITTEE'S RESPONSE DUE DATE: "INP"

AUTHORIZED EXTENSION: ______ New Due Date   ______ Signature of Grievant

### INMATE GRIEVANCE RESPONSE

Summary of Supervisor's Response/Evidence: SEE CR-3148

10/04

Chairperson's Response and Reason(s): SEE SUPERVISOR'S RESPONSE RCVD

10/10

DATE: 10/4/12   CHAIRPERSON: [signature], CPL

Do you wish to appeal this response? X YES ______ NO

If yes: Sign, date, and return to chairman for processing within five (5) days of receipt of first-level response.

10/15 Tracy Woodard — GRIEVANT   10/04/12 — DATE   [signature], CPL — WITNESS

Distribution upon final resolution:

White – Inmate Grievant   Canary – Warden   Pink – Grievance Committee   Goldenrod – Commissioner (if applicable)

Pg 2

(14)



TENNESSEE DEPARTMENT OF CORRECTION

INMATE GRIEVANCE (continuation sheet)

DESCRIPTION OF PROBLEM: I have had 7 documented episodes of eye pressures of 60 which is critical and could make me permanently blind. Even from Bedford County Jail it has been in my paperwork that I should have surgery immediately. Every time I have a episode, by the time I get looked at, my pressure has gone back down but not before me suffering for at least 15 days before it goes back down. I do have proper medication but for some reason, every other month or so my pressure goes up uncontrolably and stays high for long periods of time. It's a miracle that I'm not already blind. Always by the time I get looked at, my pressure has already gone back down. My last glaucoma high pressure episode was 8-16-2012 - 9-3-2012 in which after my pressure went back down, I was left with blurred vision from my numerous occassions of severely high pressure. On 9-6-2012 I saw a doctor here at CBCX and I was informed that I had lost too many neurons in my eye and that's why my eye isn't clearing up like it had in the past. Frequent elevated eye pressure is the reason for this. I was informed that the damage already done can not be fixed but I have to keep it from getting worse. I was taken to Vanderbilt EYE Institute on 9-25-2012 and Dr. Kuch Tey said that she was gonna put it in my paperwork for me to be seen immediately upon my pressure going up again. Once I got back to CBCX I told the nurses what was said and they said that I would have to go through a process of waiting to get approved when I hear of people being taken to the hospital all the time. Me being blind is more than a good reason to be taken to the hospital when I'm having an episode. Dr. Kuch Tey and Dr single (Vanderbilt and General) are aware of my situation and need to see my eye when I'm having an episode. Every high pressure episode decreases my vision. My last episode lasted 30 days and Dr. Kuch Tey said that I'm going mess around and be blind if this problem isn't corrected. Every episode decreases my vision in which there is no repairing. I am trying to prevent farther loss or even blindness. I would like to meet with the warden if possible or at least get it approved for me to be seen immediately by a specialist when I'm having an episode. Thank you for your time. This is an emergency because I am losing my vision rapidly. GOD Bless you.

Distribution upon final resolution:

White – Inmate Grievant Canary – Warden Pink – Grievance Committee Goldenrod – Commissioner (if applicable)



pg 3

15

# TENNESSEE DEPARTMENT OF CORRECTION

## RESPONSE OF SUPERVISOR OF GRIEVED EMPLOYEE OR DEPARTMENT

DATE: 10/1/12

Please respond to the attached grievance, indicating any action taken.

Date Due: 10/4/12

12-19150/00254119 — Grievance Number

Woodard, Tracy — Inmate Name

159910 — Inmate Number

Mr. Woodard is a 42 y/o Afro-American male with a history of a uveitic glaucoma diagnosed in June, 2011 when he was at the Bedford Co. jail by Dr. Kay Gregory. He was given eyedrops (3) and followed by the prison clinic eye Drs and at VUH eye clinic. His eye pressures (IOP) in the VUH eye clinic visits were always normal - one time without the eyedrops that morning. VUH - who saw him on 9-24-12 suggested that it was OK for him to follow-up with Dr. Singleton in 3-4 months at Metro. He has been doing (OK) doing well in the last 4 months according to Vanderbilt's report with 3 ophthalmic drops (Alphagan, Xalatan & Timoptic). As long as he keeps using these eyedrops he should be alright unless the eye gets infected. I do not understand why he keeps saying his eye pressure is up in between the specialist visits without someone checking the pressure.

[signature] — SIGNATURE

10-2-12 — DATE

White - Inmate Grievant  Canary - Warden  Pink - Grievance Committee  Goldenrod - Commissioner

CR-3148 (Rev. 3-00)  RDA 2244

page 17 of 19







# TENNESSEE DEPARTMENT OF CORRECTION
# INAPPROPRIATE GRIEVANCE NOTIFICATION

**To:** Woodard, Tracy # 159910 Unit:5

**From:** Cpl. A. Hall CBCX, Grievance Chairperson

**Date:** October 1, 2012

**Subject:** Inappropriate Grievance

---

**This grievance is inappropriate to the grievance procedure.** Your grievance is being returned to you due to the following reason(s):

1. Disciplinary matters are inappropriate to the grievance procedure. (501.01 VI-H-1) Appeals on disciplinary matters need to be done through the disciplinary process.
2. Appealing decisions or actions of any agency outside the Tennessee Department of Correction (TDOC) is inappropriate to grievance procedure. (501.01 VI. H.2)
3. Classification matter/institutional placement are inappropriate to grievance procedure. (501.01 VI-H-3)
4. Appealing or seeking review of sentence credits. (501.01 VI. H.4)
5. Grievance Procedure cannot award monetary compensation for injuries or property loss. (501.01 VI-H-5)
6. Addressing questions regarding sentence structures. (501.01 VI. H.6)
7. Visitor's behavior which results in disciplinary action. (501.01 VI. H.7)
8. A diagnosis by medical professional & medical co-pay is inappropriate. (501.01 VI-H-8)
9. Security Threat Group (STG) Placement. (501.01 VI-H-9)
10. Mail rejection. (501.01 VI-H-10)
11. You have already filed a grievance on this issue. Inmates shall not be permitted to submit more than one (1) grievance arising out of the same or similar incident. (501.01 VI-I-1) ()
12. Abuse of Grievance Procedure. You can only have one (1) grievance pending at level #1 for review. (501.01 VI. I. #1, #2, & #3)
13. Profanity, insults, and racial slurs, unless an alleged direct quote of another party, shall not be permitted. Threats may result in disciplinary action. (501.01 VI-I-3)
14. Grievances must be filed within seven (7) calendar days of the off occurrence-giving rise to the grievance. A complaint shall not address multiple issues. (501.01 VI.C.1)

---

**This grievance is unable to be processed due to you not following policy.** Grievance forms not properly completed or contain insufficient information for processing shall be returned to the inmate with instructions as to proper completion. (501.01 VI.C.1) Your grievance is being returned to you due to the following reason(s):

1. No specific details i.e., dates, times, names of persons involved as mandated in Inmate Grievance Handbook, Page 7, First l Level of Review.
2. You did not: a) sign and date, and or b) state your "Requested Solution". The "Requested Solution"
3. Grievance shall be submitted on Form CR-1394 pages 1 and 2. All copies must be legible and in tact. (501.01 VI.C.1)
4. Your Requested Solution is inappropriate to the Grievance Procedure. The Board does not have the authority to recommend disciplinary action against an employee, or change post assignments

**REMINDER:** **You have seven (7) calendar days from the date the incident occurred to submit a grievance.** If you are still interested in filing this grievance, please make the necessary corrections and return to grievance office for further processing immediately. ***If you would like to appeal this response, sign the bottom of your grievance, check "yes" then date it and place (with this coversheet) back in the grievance box.*** If you have any questions regarding this memo, please have your Unit Officer contact me at Ext. 3235 to schedule an appointment. TDOC Policy and Procedure are available in the library.

*Cpl. A. Hall*
Grievance Chairperson, CBCX

CR 3689 Duplicate as Needed RDA 2244

page 18 of 19



# TENNESSEE DEPARTMENT OF CORRECTION
## INMATE GRIEVANCE RESPONSE

WOODARD TRACY — NAME | 159910 — NUMBER | CBCX M05/17 — INSTITUTION & UNIT | 12-19/50/00254119 — GRIEVANCE NUMBER

Summary of Evidence and Testimony Presented to Committee ______

Inmate Grievance Committee's Response and Reasons NO BOARD HEARING. GRIEVANCE DEEMED INAPPROPRIATE PER TDOC POLICY (501.01 VI-H-8) A DIAGNOSIS BY MEDICAL PROFESSIONAL & MEDICAL COPAY IS INAPPROPRIATE TO GRIEVANCE PROCEDURE.

10/4/12 DATE | [signature], CPL CHAIRMAN | ______ MEMBER

______ MEMBER | ______ MEMBER | ______ MEMBER

Warden's Response: Agrees with Proposed Response ☑

Disagrees with Proposed Response ☐

If Disagrees, Reason(s) for Disagreement ______

Action Taken: ______

DATE: 10/8/12 WARDEN'S SIGNATURE: [signature]

Do you wish to appeal this response? ______ YES ______ NO

If yes: Sign, date, and return to chairman for processing. Grievant may attach supplemental clarification of issues of rebuttal/reaction to previous responses if so desired.

RECEIVED OCT [illegible] 2012 CBCC WARDEN'S OFFICE

Tracy Woodard GRIEVANT | 10/11/2012 DATE | [signature], CPL WITNESS

Commissioner's Response and Reason(s): ______

10/11/2012 DATE | Tracy Woodard SIGNATURE

Distribution Upon Final Resolution:

White - Inmate Grievant Canary – Warden Pink – Grievance Committee Goldenrod - Commissioner

Case 3:14-cv-01725 Document 17 Filed 04/13/15 Page 31 of 34 PageID #: 87

**Tracy Woodard #159910**
**Turney Center Industrial Complex**
**1499 R. W. Moore Memorial Hwy.**
**Only, Tennessee 37140-4050**

Monday, April 6, 2015

3:14-1725

**RE: WOODARD V. CORIZON, ET AL., CASE #: ~~1:13-CV-00109~~, JUDGE HAYNES**

Court Clerk, US District Court
801 Broadway, Room 800
Nashville, TN 37203

Dear Clerk,

RECEIVED
IN CLERK'S OFFICE
APR 13 2015
U.S. DISTRICT COURT
MID. DIST. TENN.

Please find enclosed in this mailing:

1. Verified Amended Complaint
2. Appendix to Amended Complaint

I have enclosed an extra copy of the front pages of each document. Please stamp these extra pages as "filed" and return them to me in the enclosed SASE.

Thank you for your time and attention to this matter.

Sincerely, Tracy Woodard #159910

Tracy Woodard
Enclosures



TRACY WOODARD #159910
TCIX UNIT 1-A-219
1499 R. W. MOORE MEMORIAL HWY.
ONLY, TENNESSEE 37140-4050

RECEIVED
IN CLERK'S OFFICE
APR 13 2015
U.S. DISTRICT COURT
MID. DIST. TENN.

COURT CLERK, US DISTRICT COURT
801 BROADWAY, ROOM 800
NASHVILLE, TN 37203

PRIVILEGED LEGAL MAIL

The [illegible] of Correction
has neither inspected
nor censored an[illegible] is n[illegible]
responsible for th[illegible] [illegible]nt[illegible]nts
Turney Center Industrial C[illegible]mplex